**UNITED STATES of America,**
**Appellee,**

v.

**Forrest PARROTT and Donald Parrott,**
**Appellants.**

**Nos. 527, 528, Dockets 34168, 34264.**

United States Court of Appeals, Second Circuit.

Argued March 12, 1970.

Decided April 20, 1970.

Rehearing Denied May 19, 1970.

Jerome J. Londin, New York City, (Carro, Spanbock & Londin, Allen Green, New York City, of counsel), for appellant Forrest Parrott.

Allen Green, New York City (Carro, Spanbock & Londin, Jerome J. Londin, New York City, of counsel), for appellant Donald Parrott.

James D. Zirin, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, Paul B. Galvani, Asst. U. S. Atty., of counsel), for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

This is an appeal by Forrest and Donald Parrott from conviction for conspiracy to sell unregistered securities and of Forrest for sale of unregistered securities and fraudulent sale of securities. Appellants Forrest and Donald Parrott are father and son respectively. Donald was tried only on the conspiracy count (count one) (counts 12–30 charging him with substantive offenses were severed), and Forrest was tried on the conspiracy count and various substantive counts of selling and aiding others to sell unregistered securities and to sell securities by fraud, in violation of sections 5 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77q. The conspiracy count also cited violations of the mail fraud statute, 18 U.S.C. §§ 1341, 1343. Appellants were tried before Judge Weinfeld and a jury in the Southern District of New York and were found guilty on all counts on which they were tried; judgment was entered October 8, 1969. Forrest was fined a total of $10,000, was given three-year concurrent suspended sentences (and one year probation). Donald was fined $1,000, imposition of sentence of imprisonment was suspended, and he was placed on probation for one day. We find no error and affirm the convictions.

Evidence was presented that Forrest Parrott owned a series of companies through a parent corporation, Ampet. In 1960 he apparently decided to revitalize a dormant subsidiary, Uranium Industries, Inc. He acquired a new president (one Vance) and purchased several properties and options with stock from the dormant company. The name of Uranium was changed to Petron and a false financial statement was drawn up by Forrest and his accountant. Donald Parrott managed to acquire cash for the company to match the overstated cash account, and arranged for loans to cover an acquisition by Petron from another Parrott company. Forrest master-minded a widespread distribution of the Petron shares to the public by selling shares held by his nominees through selected brokerage houses which employed boiler room tactics and received kickbacks for selling the unregistered securities.

Appellants raise a number of alleged errors on this appeal of which two are the most troublesome.

First, appellants contend that they were denied a speedy trial in violation of their sixth amendment rights, fifth

amendment right to due process, and their rights secured by Fed.R. Crim.P. Rule 48. The government apparently began its investigation of the Petron stock affair as early as January, 1962 and by March of that year the SEC had instituted a civil action in Colorado in regard to the transactions here found to have been criminal. A criminal reference report was sent to the Justice Department and the U.S. Attorney in Washington, D.C. in November, 1962 in connection with the sales of stock of the Hydramotive Corporation in a similar scheme. This ultimately led to an indictment in Washington which was dismissed in the district court because of the long delay (indictment there was returned in late 1964) and due to the prejudice of eliciting information in prior civil proceedings. United States v. Parrott, 248 F.Supp. 196 (D.D.C.1965). A criminal reference report was made as to the instant Petron transactions at the latest in July, 1963. The indictment in the present case was not sought in the Southern District of New York until January, 1966 and was not returned by the grand jury until March, 1966. [The present indictment was not sought until after the Washington, D.C. indictment was dismissed by the district court in December, 1965 and shortly before it was decided that the appeal of the dismissal should be dropped on recommendation of the Solicitor General.] During all this time, the government, through the SEC and officials of the Justice Department, was proceeding actively against the Parrotts and others in regard to the incidents here involved and closely related matters: (1) an SEC action against Hydramotive in Oklahoma, and (2) an action to revoke the broker's license of Raleigh, a broker-dealer controlled by Forrest Parrott, in Colorado. In these actions the SEC sought extensive discovery under the rules of civil procedure and in one case forced the Parrotts to attend a hearing in 1964 under a court order of contempt.

There is no question that there was quite a long pre-indictment delay (at the very least, almost three years from the criminal reference report in 1963 till the indictment in 1966). The government's justification is that it was tied up with other cases and that preparation here was time consuming. The government argues that this delay does not therefore require the dismissal of the indictment on these two grounds. First, the Parrotts brought on the pre-indictment delay themselves by vigorously opposing the SEC civil actions to the point of requiring the use of contempt as a means of requiring co-operation. Second, the complex nature of the criminal deeds of the Parrotts required time to unwind so that a criminal reference report was not possible until July, 1963. Moreover, the government contends that the Parrotts were not prejudiced by the delay since the government's case was based largely on documentary evidence, that the witnesses who died in the interim could only have offered hearsay testimony or could have been deposed by defendants prior to their deaths (and in some cases the witnesses had been deposed by the government in connection with the civil cases and the defendants had not participated by their own choice). The court below found that there was no plan to delay or harm the defense.

The first reason is of dubious force. A possible criminal defendant might well have lawfully been even less cooperative, for instance, by invoking his rights against self-incrimination.

The second reason carries more weight. Any delay in bringing criminal charges creates a possibility of hindrance to the development of the facts on trial by the demise of witnesses and dimming of memories. However, time is needed for investigation and determination of the need for and extent of criminal charges to be brought, particularly in wide-ranging securities distribution schemes. This is recognized by the Congress in the statute of limitations, to which we normally look to determine the period open to the prosecution to bring its formal accusations. "Where there has been a pre-arrest delay the statute

of limitations is 'usually considered the primary guarantee against bringing overly stale criminal charges' United States v. Ewell, 383 U.S. 116, 122, 86 S. Ct. 773, 15 L.Ed.2d 627 (1966)." United States v. Feinberg, 383 F.2d 60, 64 (2d Cir. 1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968); Hoopengarner v. United States, 270 F.2d 465 (6 Cir. 1959).

■ Of course, even though prejudice is not presumed from pre-arrest delay within the statutory period, a due process question may arise if the ability of the defendant to prepare his defense is impaired by the delay. United States v. Feinberg, 383 F.2d 60, 65 (2d Cir. 1967) cert. denied, 389 U.S. 1044, 88 S. Ct. 788, 19 L.Ed.2d 836 (1968). Judge Weinfeld found no such impairment, and we agree that none was established here. Appellants point to the deaths of prospective witnesses Bane and Peavey who might have testified to legal advice given the Parrotts or other matters bearing on intent. But these witnesses became unavailable very shortly after the events and long before any realistic trial date, as pointed out by Judge Gasch in the Hydramotive case. United States v. Parrott, 248 F.Supp. 196, 204 n. 43 (D. D.C.1965).[1] The pre-indictment delay had no effect on their availability. Nor was there any convincing showing of other prejudice as by failing memory of the Parrotts. The claimed memory impairment of Forrest Parrott, the sole defense witness, was quite selective. The government case was strongly based on documentary proof. We cannot say that Judge Weinfeld was clearly erroneous, or indeed not justified in the finding of lack of prejudice.

■ Appellants rely also on post-indictment delay in the case. This claim must be held to have been waived, however, for not only was there no demand for speedy trial, which is required, see United States v. Lustman, 258 F.2d 475 (2d Cir.) cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), United States v. Roberts, 408 F.2d 360 (2d Cir. 1969) (per curiam) but here the Parrotts agreed that the case be taken off the trial calendar in 1967.

■ The claim that pressing the civil proceedings while allegedly concealing the intent to prosecute criminally was unfair has considerable appeal. However, the Parrotts could have exercised their privilege against self-incrimination in the civil proceedings; thus the prior civil proceedings did not coerce appellants unfairly to incriminate themselves. United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (Feb. 24, 1970). Moreover, the testimony of the Parrotts in earlier proceedings was not used by the government in its case in chief or in cross-examination of Forrest Parrott, the sole defense witness. And the record shows advice of counsel and warnings in some of these proceedings, which indeed we have intimated in United States v. Light, 394 F.2d 908, 914 (2d Cir. 1968) may be unnecessary in view of the plain implications of the statute.

■ At one of the civil proceedings the government declined to state the identity of one who conferred at counsel table with SEC personnel, who appears to have been a government attorney assigned to preparation of criminal charges. See United States v. Parrott, *supra*, 248 F.Supp. at 199. It is incomprehensible to us why such cloak and dagger games should be played by the prosecution, jeopardizing years of work without any discernible reason. Yet the very asking of the question would seem to show an awareness that more than civil proceedings might be contemplated, and in any case counsel surely must have realized such a possibility here. See United States v. Kordel, *supra*, 90 S.Ct. at 763 and n. 24.

■ The remaining contentions of the appellants have little merit. They

---

1. The lawyer on whose advice Parrott claimed to have relied in the Hydramotive promotion, one Heidenrich, would have been available at a reasonably prompt trial, which led to the ruling that the delay there was prejudicial.

contend that the charge as to the applicability of Regulation A was erroneous. The charge instructed the jury that the regulation was inapplicable here. Appellants say that the charge should have enumerated the bases for the applicability and told the jury that the government had the burden to overcome or prove that it was inapplicable. But here there was no basis for any application of the regulation and had the jury found it to be applicable the verdict would have been incredible. A sale of shares in 1954 which was exempted by Regulation A does not forever exempt those securities from regulation. Even if it did, the appellants put in no evidence that they had sold the shares in compliance with their allegedly exempt status (they did not send the 1954 offering circulars with the current sales confirmations, nor did they update the original offering circular after 9 months had passed).

Next, they make a similar claim as to the applicability of Rule 154, 17 C.F.R. § 230.154, about which the charge simply instructed that this defense was inapplicable. The only evidence in the case showed that appellants were actively distributing the shares of Petron through various security brokers (they did not contest the distribution) and the rule only applies to unsolicited offers to buy. There is also some doubt that the appellants were selling only 1% of the outstanding shares within any 6 months (which is a prerequisite of the rule).

▮ The charge as to the holding of securities more than 6 months to one year was that this holding in itself does not entitle one not to register the securities if registration is otherwise required. This is correct. If the appellants wanted to argue that the SEC practice was not to require stock held that long to be registered, they could have made this argument to the jury for whatever relevance they thought it had to the criminal prosecution (perhaps as to their criminal intent).

▮ Next they attack the charge for having explained the purpose of the Securities Act: to protect the investing public from fraudulent practices. The argument is that the jurors might feel that the statute was designed to protect them as investors and that therefore they had a personal interest in convicting the appellants. This argument has little substance. Many statutes protect the general public and yet juries are able to disassociate their personal interest as members of the public from their determinations of guilt and innocence (e. g., the law against murder and rape). In any case, the charge as to the purpose of the statute was useful to give the statute some coherence in the eyes of the jury which may not have been fully informed as to the meaning of the securities laws.

▮ Appellants next contend that the reading of the indictment as part of the charge was boring to the jury and prejudicial to the appellants. There is nothing in this claim. See United States v. Kelly, 349 F.2d 720 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S. Ct. 1467, 16 L.Ed.2d 544 (1966).

▮ While the jury was deliberating they sent a note requesting the stock transfer ledger kept by Donald. There was some evidence at trial (namely, Brehmer's testimony) indicating that Donald kept the Petron transfer ledger until May 1961 when Brehmer took over. Appellants asked that the ledger be divided into the part kept by Donald and the part kept by Brehmer before sending the jury only the former part. The judge denied this request. An hour later the appellants' counsel requested that the jury be instructed that Donald may not have kept the entire record in the ledgers, and an agreed note was prepared and sent to the jury. This was the first time that appellants' counsel stressed that Donald may not have kept the ledgers between February and May, 1961, and there had been no objection to the charge that the government contended that Brehmer took over in May, 1961. If the defense wanted other evidence to be considered by the jury as to the date

of takeover by Brehmer, they should have stressed this evidence in trial testimony and in their summations. While we disapprove the sending in of a written note to the jury rather than calling the jury into open court for oral instruction, see United States v. Schor, 418 F. 2d 26 (2d Cir. 1969), no prejudice appears and appellants agreed to the method used. We find no reversible error here.

Donald argues that there was insufficient evidence to convict him. There was evidence that he drew a check to inflate Petron's cash account for the fraudulent financial statement; that he arranged loans to cover Petron's acquisitions of properties which were overstated on the financial report; that he arranged a check paid to Petron in purchase of some nonexistent debentures; that he was transfer agent for Petron during the fantastic rise in the price of Petron stock (until May, 1961), and that he worked closely with his father in a one-room office and was integrally tied up in his affairs. If Donald claims that all he was doing was innocently carrying out the instructions of his father, he could make that argument as a defense (that he had no evil intent). But there is sufficient evidence here to reject such a contention and hence the case was properly submitted to the jury and its verdict was properly based on the evidence.

Donald contends that the government's summation was improper and based on false evidence when it contended that Brehmer took over the transfer ledgers in May, 1961. He shows evidence which was admitted which shows that Brehmer signed stock transfers as early as March, 1961. The government, however, did not conceal this evidence since it was admitted and available to all. Its summation was based on the only testimony bearing on when Brehmer took over, to wit, Brehmer's oral testimony. There is nothing improper about such a summation.

Next appellants argue that Brehmer's post-trial motion to set aside his guilty plea on the grounds that at the time he pled he thought he had a promise of getting at most a suspended sentence, invalidates his trial testimony that he had not been promised anything for his testimony. At trial appellants did not attack this testimony or cross-examine to try to show that Brehmer's credibility might be weak due to possible promises. Brehmer's post-trial motion was held to be frivolous by Judge Weinfeld, and since it is based on his self-serving allegations about what he had thought, it is not enough seriously to put in question the veracity of his trial testimony that he had not been promised anything.

Next appellants attack the admission into evidence of two letters from the Parrotts to a Denver bank which substantiated the proof of a scheme to distribute the Petron stocks through certain nominees. They claim that the letters were not authenticated, and the fact that the bank filed the letters after receipt in the ordinary course of their business does not give the letters the necessary authentication that they came from the Parrotts in order to make them admissible as evidence. This argument has some basis. But the appellants did not object to the introduction of the letters on this ground below when the lack could have been cured and so are barred from claiming this ground on appeal. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

We have considered the other arguments advanced by appellants and find no grounds for reversal. Judgment affirmed.