UNITED STATES of America,
Appellee,

v.

Ernest A. BARTLETT, Jr., Appellant.

No. 20121.

United States Court of Appeals,
Eighth Circuit.

Oct. 13, 1971.

---

Don Gillaspie, Fort Smith, Ark., for appellant.

Dward J. Barnes, Jr., Sp. Atty., Dept. of Justice, Washington, D. C., for appellee.

Before VAN OOSTERHOUT, MEHAFFY and ROSS, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal by defendant Ernest A. Bartlett, Jr., from his conviction by a jury on twenty-six counts of a twenty-eight count indictment and the resulting sentence. All counts charged defendant, Bruce Bennett, Afton A. Borum and Hoyt Borum with various violations of federal statutes. Others are named as co-conspirators but are not made defendants.

Counts 1 through 10 charged fraud in the sale of securities in violation of 15 U.S.C.A. § 77q(a). Counts 11 and 12 charged wire fraud in violation of 18 U. S.C.A. § 1343. Counts 13 through 23 charged mail fraud in violation of 18 U. S.C.A. § 1341. Counts 24 and 25 charged sale of unregistered securities in violation of 15 U.S.C.A. § 77e(a) (2). Count 28 charged conspiracy to violate the statutes upon which the specific substantive charges are based. Counts 26 and 27 were dismissed by the court.

Hoyt Borum pleaded guilty to count 19. Afton Borum pleaded guilty to count 24. Bennett was granted a separate trial and has not yet been tried. Only Bartlett was tried in the case now before us. He was found guilty on each of the 26 counts submitted.

Bartlett was sentenced to five-years imprisonment and a $5,000 fine on count 1, three-years imprisonment on counts 2 through 25, to run concurrently with the sentence imposed on count 1, and to a three-year consecutive suspended sentence on count 28, with defendant to be placed on probation for three years, the probation period to commence at the expiration of the sentence on count 1.

Bartlett does not challenge the sufficiency of the evidence to support a conviction upon any count upon which he was convicted. Hence a detailed discussion of the voluminous substantial evidence which supports the conviction will serve no purpose.

Bartlett was chief executive officer of the Arkansas Loan and Thrift Company (A.L.&T.), an Arkansas corporation engaged in the consumer finance business. The evidence shows that defendant, and others named as conspirators but not made defendants, sold stock of the corporation and bond investment certificates in violation of the registration and fraud provisions of the Securities Act of 1933 and the wire fraud and mail fraud statutes. Approximately 2100 persons invested over $4,000,000 in the company and sustained substantial losses by reason of fraud perpetrated by defendants' illegal activities. Further information with respect to A.T.&L. and defendants' activities may be found in Bryan v. Bartlett, 8 Cir., 435 F.2d 28; S. E. C. v. Arkansas Loan & Thrift Corp., W.D.Ark., 294 F.Supp. 1233; S.E.C. v. Bartlett, 8 Cir., 422 F.2d 475; S.E.C. v. Arkansas Loan & Thrift Corp., W.D.Ark., 297 F. Supp. 73.

A careful examination of the record convinces us that all essential elements of the offenses charged are supported by substantial evidence.

Bartlett contends that he is entitled to a reversal and a new trial by reason of prejudicial error committed by the trial court in the following respects:

I. Error in admitting testimony of attorney Parker over defendant's objection that reception of such testimony violated the attorney-client privilege.

II. Error in the court's instructions.

III. Error in receiving in evidence on rebuttal depositions of Bartlett given in a civil action instituted by the Securities and Exchange Commission against A.L. &T.

We find no prejudicial error was committed at Bartlett's trial for the reasons hereinafter stated.

I.

Bartlett made a motion to suppress the testimony of Douglas Parker on the ground that the testimony should be excluded on the basis of attorney-client privilege. An appropriate standing objection was also made to each of the questions propounded to Parker on the basis of attorney-client privilege. Parker during the time here material was a member of the firm of Garner and Parker. The firm served as counsel for A. L.&T. on a monthly retainer basis. Garner prior to February 19, 1968, performed the principal services of the firm for A.L.&T. and was named a co-conspirator but not a defendant. Parker was not so named. After February 19, 1968, Parker participated more actively in representing the corporation.

Parker's testimony includes the circumstances under which he individually purchased A.L.&T. stock and his individual participation with Bartlett and others in an unfortunate investment in Southern Business College which was financed by A.L.&T. Bartlett in brief concedes that Parker's testimony as to these transactions does not fall within the attorney-client privilege.

Bartlett does insist that Parker's testimony regarding what took place at two meetings held on February 19, 1968 and an A.L.&T. directors' meeting held on March 3, 1968, are covered by the privilege. Bartlett was not present at the first meeting on February 19 and thus could not have made any confidential communication at such meeting. At this meeting the company's attorneys Garner

and Parker advised the Borums that the report of Reynolds, a CPA employed by A.L.&T. to audit its books, showed a loss of $463,200 and that the company was hopelessly insolvent. The attorneys recommended that a directors' meeting be called immediately and that the company close its business and make a full disclosure to the State Chancery Court or the federal court, and that if the doors were not closed new deposits should be segregated in a separate trust account and that insiders should not withdraw their deposits or notify any depositors of the company's condition.

That afternoon the attorneys met with Bartlett and other company directors and officials. Bartlett accused Garner and Parker of conspiring to take over the company. Parker went to Reynolds' office and obtained a copy of the accounting summary (Exhibit J–42), brought it back to the meeting and advised those present of its contents. Bartlett asserted that the report was incorrect. There was some discussion about raising additional capital. Parker renewed his advice given at the morning meeting. No directors' meeting was called and the corporate business continued as before.

A directors' meeting was held on March 3, 1968, attended by Bartlett, the other directors and some company officials. Accountant Reynolds was also present. Bartlett again challenged the accuracy of Reynolds' report. Reynolds expressed the view that the company's books were poorly kept but that the loss would be close to the amount shown in his report and likely more. Bartlett stated that if given time he could show that the company was not in the condition reported, but if so, he could provide additional capital. The directors voted to go along with Bartlett and continued business.

█ The trial court, after holding an evidentiary hearing out of the presence of the jury, held Parker's testimony was not privileged. The significant part of Parker's testimony which relates to the February 19 and March 3 meetings is not subject to the attorney-client privilege. The accountant's report showing the loss was received by the attorneys from the accountant and with respect to Bartlett was not a communication between attorney and client. See Bouschor v. United States, 8 Cir., 316 F.2d 451, 456–457; United States v. Silverman, 2 Cir., 430 F.2d 106, 121–122.

In *Bouschor* we stated:

"In any event, in order for the privilege to be invoked, the communication must have been one between attorney and client and it must have been made in confidence. These are two among several essentials described in 8 Wigmore, Evidence, § 2292 (McNaughton Rev. 1961). More specifically,

'[I]f an unprivileged document exists before there exists an attorney-client relationship the mere delivery of the document to an attorney does not create a privilege. * * *

'One of the essentials of a privileged communication is that it be confidential.' Brown v. St. Paul City Ry., supra, pp. 33–34 of 241 Minn. [15], p. 700 of 62 N.W.2d [688]; * * *.'" 316 F.2d 451, 457.

We also held in *Bouschor* that one claiming privilege has the burden of establishing it.

In *Silverman,* the court held:

"The privilege as commonly formulated refers to a confidential communication *from* the client *to* the attorney. 8 Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961); compare Uniform Rule of Evidence 26 ('between lawyer and his client'). Wigmore states that the reason for bringing communications from the attorney to the client within the privilege is to prevent adopted admissions or inferences of the tenor of the client's communication. 8 Wigmore, Evidence § 2320 (McNaughton rev. ed. 1961). The purpose of the privilege, the encouragement of full disclosure

to the attorney in procuring legal advice, implies that a communication from an attorney is not privileged unless it has the effect of revealing a confidential communication from the client to the attorney." 430 F.2d 106, 122.

In National Labor Relations Board v. Harvey, 4 Cir., 349 F.2d 900, 905, the court states:

"Not all communications to a lawyer are privileged. The authorities establish that the privilege is allowed only with respect to the client's communication made ' * * * for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, * * *.' United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 358 (D.Mass. 1950). In Olender v. United States, 210 F.2d 795, 806 (9th Cir.1954) the Court observed:

' * * *. The attorney-client privilege is limited to communications made in the course of seeking *legal advice* from a professional legal adviser *in his capacity as such*.' "

In our present case, defendant has failed to establish that the attorney-client relationship existed between him and Parker at the time of the alleged disclosure. The relationship established was between the attorney and the corporation. The fact that Parker may have subsequently represented Bartlett at some SEC hearings does not establish that Parker was serving as Bartlett's attorney at the time here critical. The fact that Bartlett accused Garner and Parker of conspiracy to take over the company at the February 19 meeting goes far to negate any attorney-client relationship then existing.

Moreover, we find nothing in the way of confidential communication by Bartlett to Parker at any of the meetings. Bartlett consistently took the position that the accountant's loss report was incorrect and that the company was not in the bad financial position reported by the accountant.

The trial court also found that any disclosure made by Bartlett was made in the course of the commission of a crime or fraud and hence not privileged under the rule stated in United States v. Bob, 2 Cir., 106 F.2d 37, 39–40; Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993.

■ If, contrary to what we have heretofore said, any confidential communications were in fact made by Bartlett to Parker, the court properly determined the privilege was lost under the crime or fraud exception to the privilege upon the basis of the cases last cited.

## II.

Defendant contends that the court erred in overruling the exceptions he took to instructions 9, 12, 46 and 53, and in giving such instructions to the jury.

Instruction 9 sets out the purpose of the Securities Act. The court points out that when a person desires to purchase a new car, appliance or a head of lettuce he can pretty well tell the quality of the product by examination and the reasonableness of the price, but that an investor purchasing a security must rely on the representations of the company as to its assets, management and products in determining the reasonableness of the price asked. For that reason the Act requires registration of securities based on reliable information with respect to the company or the security and prohibits fraudulent or deceptive practices in offering securities for sale.

■ The court in United States v. Parrott, 2 Cir., 425 F.2d 972, 977, approved a similar instruction, stating, "In any case, the charge as to the purpose of the statute was useful to give the statute some coherence in the eyes of the jury which may not have been fully informed as to the meaning of the securities laws."

■ We find no error in instruction 12. The court sets out the definition of

securities set forth in the Security Act and advises the jury that defendant is charged with selling securities. The alleged securities involved in this case are shares of common stock and deposits in savings accounts known as bond investment certificates. The court in the challenged instruction does not instruct the jury to find as a fact that the stock certificates and investment certificates are securities. Moreover, in instructing the jury on counts 1 to 10 relating to Security Act violations, the court specifically told the jury that an essential element of the offense was the offer and sale of securities.

 Instruction 46 is the accomplice instruction. We have carefully examined the instruction and find the court committed no error in giving it. The first two paragraphs of the instruction merely set forth the recognized postulate of criminal law, that the testimony of an accomplice in a criminal conspiracy case is often required to establish the essential element of the crime charged, and that the use of such testimony is permissible. See United States v. Corallo, 2 Cir., 413 F.2d 1306, 1322; Patriarca v. United States, 1 Cir., 402 F.2d 314, 323. Such statement does not constitute impermissible advocacy. The balance of the instruction sets out the standards to be applied in evaluating the testimony of an accomplice. The instruction as given meets established standards. See Hanger v. United States, 8 Cir., 398 F.2d 91, 108; Williams v. United States, 8 Cir., 328 F.2d 256. Additionally, we observe that in the present case there is a great deal of corroborating direct testimony.

 The court committed no error in giving instruction 53 relating to the consideration to be given circumstantial evidence. The instruction as given meets the standards set out in Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150.

The instructions must be considered as a whole. When so considered, we are satisfied that the case was submitted to the jury upon proper instructions.

### III.

Defendant contends that the court erred in admitting three depositions made by the defendant (Exhibits P–1, P–2 and P–3) for impeachment purposes. The depositions were taken in connection with civil proceedings commenced against A.L.&T. by the SEC. Exhibit P–1 taken May 14 and 15, 1968, contains 220 pages; Exhibits P–2 and P–3 taken August 21 and 22, 1968, contain 355 pages. When these exhibits were originally offered the court excluded all but the first 72 pages of P–1. The court found the defendant had been given proper Miranda warnings before giving his testimony. Mr. Sexton, defendant's counsel, stated that to the best of his recollection he had been told by the government counsel prior to the depositions that no criminal proceedings were contemplated and that hence he did not represent the defendant at the deposition taking. Due to lapse of time and absence of a record, the testimony on this matter was rather indefinite. The court in initially making the exclusion stated that he so ruled because of the uncertainty as to just what conversation took place and his desire to give the defendant the benefit of the doubt. We will assume for the purpose of this case that the original exclusion ruling was proper.[1]

Bartlett as a witness on direct examination repeatedly stated that he had never been permitted to tell his side of the story during the course of the previous litigation and that this was his first opportunity to do so. On recross examination he was asked, "Mr. Bartlett, you say you were never allowed to tell your side of the story?" and answered, "Yes, that's what I said."

---

1. There is considerable room for doubt whether the exclusion ruling was required on the record made. See United States

v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1; United States v. Parrott, 2 Cir., 425 F.2d 972, 976.

Exhibits P–1, P–2 and P–3 were then identified and offered in evidence for impeachment purposes. Defendant was represented by an attorney, Mr. Garner, at the deposition proceedings. The court admitted the depositions for impeachment purposes, giving the jury a limiting instruction reading:

"Now, Ladies and Gentlemen of the Jury, the Exhibits that have just been proffered by the Government and received in this case are to be considered in testimony as to the credibility of the witness and his statement that he has not had an opportunity to tell his story. Now other than what has been received within the depositions referred to, you are to receive the total of these depositions for that purpose only."

 The depositions were properly admitted for the limited purpose of impeaching defendant's testimony that he never had an opportunity to tell his side of the story.

Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1, holds that a defendant who has elected to testify as a witness is under an obligation to speak accurately and truthfully, and that the prosecution is entitled to use traditional truth-testing devices of the adversary process. The use of testimony barred by the *Miranda* rule (384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) was permitted for impeachment purposes. We need not go that far here as *Miranda* requirements have been met.

Moreover, government counsel, who tried the case, in his brief and upon oral argument emphatically stated that Exhibits P–1, P–2 and P–3 were never read to or sent to the jury room. This is borne out by the record. The jury made eight separate requests for specific exhibits. No request included Exhibits P–1, P–2 or P–3. The record reflects that the exhibits were numerous and voluminous and that the court's policy was to send to the jury only exhibits requested by the jury.

Defendant makes only a blanket charge that he was prejudiced by the admission of Exhibits P–1, P–2 and P–3 for impeachment purposes. The evidence in support of the conviction is strong and overwhelming. Defendant has failed to point to any specific testimony in the exhibits which is prejudicial. The burden is upon the defendant to demonstrate that prejudicial error has been committed. We are under no duty to search for error in the five-hundred pages of depositions. Defendant has failed to meet the burden resting upon him to establish the court committed prejudicial error in admitting the exhibits for impeachment purposes.

Our examination of the record satisfies us that the defendant has had in all respects a fair trial.

Affirmed.