Stephenson, Circuit Judge, dissented and filed opinion.

**UNITED STATES of America,
Appellee,**

v.

**Ronald Seibelt GOLDENSTEIN,
Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**John Larry RAY, Appellant.**

**Nos. 71-1294, 71-1342.**

United States Court of Appeals,
Eighth Circuit.

March 23, 1972.

Rehearing and Rehearing En Banc
Denied May 17, 1972.

**1008**

Gary T. Sacks, St. Louis, Mo., for appellant, Goldenstein.

Robert Hampe, St. Louis, Mo., for appellant, Ray.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and STEPHENSON, Circuit Judges, and REGISTER, Senior District Judge.

VAN OOSTERHOUT, Circuit Judge.

Defendants Goldenstein and Ray, with Jerry Miller and James Benny, were indicted on a charge of aggravated bank robbery of the Bank of St. Peters, Missouri, in violation of 18 U.S.C.A. § 2113 (a), (d). Goldenstein and Ray entered pleas of not guilty and were jointly tried to a jury. Each was found guilty as charged. Ray was sentenced to eighteen years imprisonment. Goldenstein was sentenced to thirteen years. Each defendant has appealed in forma pauperis from his conviction. Defendants are represented by separate court-appointed counsel.

Defendants conceded that the Bank of St. Peters was robbed of some $53,-000 at approximately 1:25 p. m. on October 26, 1970, and that the deposits of the bank were insured by the Federal Deposit Insurance Corporation. It is firmly established that the robbery was accomplished by three armed men who wore masks, hats and gloves. The robbery took about three minutes. None of the bank employees were able to positively identify any of the robbers. Other evidence to the extent necessary will be set forth in the course of the opinion.

Defendants raise some common issues. Each defendant also raises separate issues. We will deal with the appeals separately, treating the common issues in the Goldenstein appeal.

GOLDENSTEIN APPEAL.

Goldenstein as a basis for reversal urges the court erred in the following respects:

I. Overuling the motion to suppress evidence seized in violation of Fourth Amendment rights.

II. Denial of motion for acquittal.

III. Admitting testimony of Goldenstein's attorney with respect to large sums of money taken from Goldenstein's hotel room subsequent to his arrest.

IV. Denial of motion for separate trial.

V. Prejudicial argument.

Each of such contentions will be considered separately.

I.

The Portland, Oregon, police in a search of Goldenstein's hotel room at the Cornelius Hotel on November 28, 1970, found and seized $12,900 in currency which included fifty $20 bills identified by officers of the Bank of St. Peters as

bait money stolen from the bank. There is substantial evidence that the particular money was in the bank immediately prior to the robbery and that it was no longer in the bank after the robbery. Goldenstein filed a motion to suppress the use of all of the seized money as evidence on the ground that it had been obtained as a result of an unlawful search and seizure in violation of his Fourth Amendment rights.

An evidentiary hearing was held. The motion to suppress was denied. The motion to suppress was renewed during the course of the trial. An additional evidentiary hearing was held out of the presence of the jury. The motion to suppress was again denied. The money seized was introduced and received in evidence.

Goldenstein at the time of the search of room 728 at the Cornelius Hotel was a registered guest of the hotel entitled to possession of room 728. The search of the room was made by Officer Ueland of the Portland police. It is conceded that he had no warrant authorizing the search.

Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 656, involved the search of defendant's hotel room without a warrant. The Court holds:

> "The search of the petitioner's room by the police officers was conducted without a warrant of any kind, and it therefore 'can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant. . . .'" 376 U.S. 483, 486, 84 S.Ct. 889, 891.

See Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685.

Recognized exceptions to the search warrant rule are: (1) Consent to the search. (2) Search incident to a lawful arrest. (3) The emergency and hot pursuit doctrine.

The consent exception does not apply here. Neither defendant nor any one authorized by him so to do consented to the search. The Government does not claim otherwise. A hotel clerk cannot validly consent to the search of a guest's room. Stoner v. California, supra.

The search was not incident to a lawful arrest. No probable cause for arrest is established as of the time of the search. Moreover, defendant was not found or arrested in his room. Thus the search could not be incident to an arrest. In any event, the scope of the search was beyond that permitted as an incident to a lawful arrest as established by Chimel.

The real issue is whether the emergency or hot pursuit doctrine exception is established. This court recently considered the emergency doctrine in Root v. Gauper, 8 Cir., 438 F.2d 361. We cited the relevant cases and then stated:

> "For purposes of the instant case, the emergency or exigency doctrine may be stated as follows: police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance. In applying this doctrine, two principles must be kept in mind. (1) Since the doctrine is an exception to the ordinary Fourth Amendment requirement of a warrant for entry into a home, the burden of proof is on the state to show that the warrantless entry fell within the exception. McDonald v. United States, 335 U.S. [451] at 456, 69 S.Ct. 191, [93 L.Ed. 153]; United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951). (2) An objective standard as to the reasonableness of the officer's belief must be applied.

> '* * * [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard:

would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' Terry v. Ohio, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)." 438 F.2d 361, 364–365.

■ We find substantial evidentiary support for the trial court's determination that the officer was justified in entering the defendant's room under the emergency doctrine for the purpose of rendering any aid that might be necessary and possibly to interrogate the defendant. The police had been called to the hotel by reason of a severe fight. They arrived a few minutes later. Upon arrival, Officer Ueland found a victim of a shooting lying on the floor in the hotel with a gunshot wound which caused his death shortly thereafter. Ueland's testimony credited by the trial court, is to the effect that the desk clerk advised him that Goldenstein had gone upstairs just after the fight, carrying a gun and appearing to be wounded. He was told that the defendant was registered in room 728 and that he registered at the same time as the shooting victim in the lobby. The officer went to room 728, knocked at the door and received no answer. At the officer's request, the hotel clerk opened the door. A thorough search of the room was made for Goldenstein, including looking in the bathroom, the closet and under the bed. A bloody shirt was observed on the bed. The officer was satisfied that the defendant was not in his room. Up to this point we believe that the intrusion was reasonable and falls within the emergency exception.

Thereafter, the officer conducted a thorough search of the room. He discovered in defendant's closed suitcase on the dresser, under some clothing therein, the currency above described which is subject to the motion to suppress. The money was not in plain sight and thus its taking was not authorized under the plain sight rule.

The right to search emergency doctrine would under the circumstances of this case be no greater than the right to search incident to a lawful arrest. The Supreme Court in *Chimel* holds that a warrantless search is limited to the "arrestee's person and the area 'within his immediate control.'" The Court goes on to say:

"There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." 395 U.S. 752, 763, 89 S.Ct. 2034, 2040.

See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

Since the officer had satisfied himself that Goldenstein was not in his room, the officer's safety did not require a search for weapons or evidence which defendant might immediately destroy. The officer concedes that the room could have been sealed off or posted to prevent defendant from making entrance until a warrant could be obtained. See United States v. Jeffers, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59. While Ueland was the only officer involved in the search, other officers were available in the hotel lobby.

■ The search occurred early on Saturday morning. The Government's contention that it was unlikely that an officer authorized to issue a warrant would be available prior to Monday in a city like Portland in an emergency situation is not supported by evidence and is not persuasive.

Moreover, the Government has failed to establish that Ueland at the time of the search had knowledge or reliable information that Goldenstein had shot any one or that he had committed any crime. At most a basis existed for interrogating

Goldenstein for information relative to the shooting of his companion who had been engaged in a fight with persons other than Goldenstein.

The situation in our present case is distinguishable from that in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, where the police on reliable information in hot pursuit followed a suspect of an armed robbery into a house and the search for weapons was made before the suspect was apprehended.

We realize that the defendant is receiving an undeserved break in suppressing the evidence.[1] The reception in evidence of the money does not impair the fairness of the trial. Without the money evidence, a conviction will be far more difficult to obtain. The Supreme Court has authoritatively held that suppression of the fruit of an unlawful search is essential to discourage officers from making seizures violative of Fourth Amendment rights. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. We are bound by such decisions and upon the basis thereof we are compelled to hold that the motion to suppress the seized money should be sustained and that by reason of the court erroneously admitting such evidence as against Goldenstein, defendant Goldenstein is entitled to a new trial.

## II.

We hold that the court properly overruled defendant's motion for acquittal. It is quite true that none of the bank employees were able to identify the defendant as the robber. Such identification was made difficult by the masks worn by the robbers. We have carefully examined the record and are satisfied that there is adequate circumstantial evidence to support the conviction.

## III.

Goldenstein objected to the admission in evidence of $5,000 in currency found in defendant's hotel room when defendant's Portland attorney, accompanied by the hotel manager and several hotel employees, went to room 728 on November 28, subsequent to defendant's arrest. The hotel manager at the suggestion of the attorney looked in the closet and found a package of $5,000 in currency which he handed to the attorney who delivered it to the police. Goldenstein's objection is based upon (1) attorney-client privilege, and (2) failure to show Goldenstein's prior impecunious circumstances.

No prejudicial error was committed in admitting the money in evidence. There is no evidence that the attorney acquired information as to the money by means of a confidential communication directed at aiding in defendant's defense. See United States v. Bartlett, 8 Cir., 449 F.2d 700, 703. Any communication made for the purpose of concealing stolen money would not be privileged.

Unexplained evidence of wealth subsequent to the commission of a crime is generally admissible in the court's discretion, even in the absence of direct proof of prior impecunity. United States v. Crisp, 7 Cir., 435 F.2d 354, 360. The weight of such testimony is for the jury's determination.

## IV.

We do not reach defendant's contention that the court erred in denying his motion for severance as we have determined Goldenstein is entitled to a new trial on other grounds. Upon retrial, it is very unlikely that Goldenstein will be tried jointly with Ray.

## V.

We reject defendant's contention that the Government's attorney com-

---

1. See dissenting opinion of Chief Justice Burger in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 411, 91 S.Ct. 1999, 29 L.Ed.2d 619. See also Coolidge v. New Hampshire, supra.

mitted prejudicial error in his closing argument. No exception was taken to the argument when made. Thus absent plain error, the contention is not entitled to consideration. We have examined the argument and the record and are satisfied that no plain error was committed.

Upon appeal, the judgment of conviction is reversed for error in denying the motion to suppress and the case is remanded to the trial court for further proceedings consistent with the views herein expressed.

### RAY APPEAL.

Ray, in addition to joining in many of the errors asserted by Goldenstein, bases his right to reversal upon the following additional assertions of error:

I. Denial of writ of habeas corpus ad testificandum.

II. Refusal to order production of statement of a government witness in violation of the Jencks Act.

III. Denial of motion for severance and separate trial.

We find no prejudicial error has been committed with respect to defendant Ray and affirm his conviction for the reasons hereinafter stated.

### I.

■ Ray requested a writ of habeas corpus ad testificandum for the production of his brother James Earl Ray, who at the time of the robbery and at the time of the application was in custody in Tennessee on a charge of slaying Dr. Martin Luther King. Ray as part of his defense claims that the present prosecution against him is malicious and for the purpose of carrying out threats to put him in jail and that his brother's testimony would further such defense. The trial court denied the writ. The granting of the writ sought rests largely in the discretion of the trial court. Gilmore v. United States, 10 Cir., 129 F.2d 199, 202.

■ The court upon inquiry ascertained that no material testimony bearing upon the charge here involved could be given by James Earl Ray. Whether or not James Earl Ray had been abused or coerced by federal officials has no bearing on defendant Ray's defense in the present case. Moreover, to transport James Earl Ray would constitute a very substantial security risk, both from the standpoint of Ray's safety and the danger of escape. The court did not abuse its discretion in denying the writ.

### II.

■ Government witness Olendorff was interviewed by an FBI agent. The agent took notes as he conducted the interview. Ray urges that the court erred in refusing to order the Government to produce the agent's report of the interview under the Jencks Act, 18 U.S.C.A. § 3500. The witness testified that he had been interviewed by the FBI, that the agent took some notes during the course of the interview, that no statement was read back or shown to him and that he signed no statement, and that no stenographic or other substantially verbatim recording was made of his statement. The court denied the request on the ground that no statement was given by the witness within the meaning of the Jencks Act. Ray has not established such ruling is clearly erroneous. See United States v. Scaglione, 5 Cir., 446 F.2d 182, 183; United States v. Blackburn, 5 Cir., 446 F.2d 1089.

### III.

■ Defendant asserts error in the denial of his motion for severance. He urges that the introduction in evidence of the money seized from Goldenstein's room resulted in severe prejudice to him. The seized money is admissible as to Ray. The exclusionary rule of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and Mapp v. Ohio, supra, applies only to a party from whom the property had been illegally seized in violation of Fourth Amendment rights. Evidence illegally obtained from one defendant is not excludable against a co-defendant when the Fourth Amendment rights of the co-

defendant have not been violated by the search and seizure. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176; Standard Oil Co. v. State of Iowa, 8 Cir., 408 F.2d 1171, 1174–1175.

■ There is no evidence that Ray was in Portland or that he had any occupancy rights in the Portland hotel room assigned to Goldenstein. No constitutional right of Ray's was violated by the seizure. Thus if Ray were tried alone, the seized money would be admissible against him provided there is other substantial evidence connecting him with the robbery and with Goldenstein.

Ray raised the sufficiency of the evidence against him by motion for acquittal in the trial court but does not attack the sufficiency of the evidence by brief point or argument upon appeal. We have examined the record and agree with the trial court that the motion for acquittal was properly overruled and that sufficient connection of Ray with the robbery has been established to make the seized money admissible as to Ray.

■ The Government, in light of the verdict, is entitled to have the evidence viewed in the light most favorable to it. The judgment of conviction as to Ray is affirmed.

Judgment reversed and case remanded as to Goldenstein. Judgment affirmed as to Ray.

STEPHENSON, Circuit Judge (dissenting).

The issue presented by this case is far-reaching in its implications for effective police action and investigation. The precise question is whether the Fourth Amendment prohibits the police, operating under an emergency engendered by a gun battle, from entering the hotel room of one of the participants and there performing a warrantless search for the express purpose of ascertaining whether "there was another victim or if there was a gun involved that could be associated with the shooting." * Believing, as

I do, not only that such a search is reasonable but also that failure to conduct such a search would have been patently unreasonable, I must respectfully dissent.

In invalidating this search I believe the majority ignores the gist of the framework of past Supreme Court decisions delineating an exception to the warrant requirement in situations where police officers have probable cause to search but, due to the presence of emergency or exceptional circumstances, find it impracticable to secure a warrant. I refer, of course, to Warden v. Hayden, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1963); Chapman v. United States, 365 U.S. 610, 615, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); United States v. Jeffers, 342 U.S. 48, 52, 72 S. Ct. 93, 96 L.Ed. 59 (1951); McDonald v. United States, 335 U.S. 451, 454, 69 S.Ct. 191, 93 L.Ed. 153 (1948); and Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). For me, the principles and common-sense meaning of those decisions make it clear that such a case as this is one of the "few specifically established and well-delineated" situations, Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), where a warrantless search of a "dwelling" can withstand constitutional scrutiny.

The crucial facts which bear upon entry into the hotel room and the attendant search are (1) that a man had been severely wounded in a gun battle in the hotel lobby; (2) that one of the gunfighters had fled upstairs, armed and wounded; (3) that the fleeing suspect had been registered in Room 728; (4) that this information was conveyed immediately to Officer Ueland upon his arrival at the scene some 10 minutes after the shooting; and (5) that upon entering the room into which the suspect had just moments before fled, Officer Ueland observed an undershirt stained with what appeared to him to be fresh blood. It is in the face of these facts and the

* R., at 7.

obvious emergency generated thereby that the majority would have Officer Ueland, who then was alone, to halt his pursuit and to leave the scene to secure, at 2:00 a. m. on a Saturday morning,[1] a search warrant empowering him to enter the room and to seek out clues as to the identity[2] and whereabouts of the suspected killer. I am unable realistically to say that Officer Ueland's decision to search was unreasonable. Delay in order to obtain a warrant would have given this dangerous suspect just the time he needed to take refuge in flight, to further conceal his identity, and, perhaps, to shoot and maim others.

The majority seems to agree that there can be no doubt, upon the basis of the obvious urgency of the moment, that entry into the room was lawful and justified. The master issue, however, and the one upon which I am divided from the court, is whether Officer Ueland, after learning that the room was vacant, nevertheless, could reasonably conduct a thorough and warrantless investigation of the room and its contents for the narrow purpose of determining who the suspect was, to where he might have fled, and whether he left weapons behind. For me, the answer to this question can only be in the affirmative. The man lying near death in the lobby, the room clerk's information as to the identity, the likely location and the dangerous and wounded condition of the suspect, and the blood-stained undershirt in the room add up to the necessity for positive, swift, and effective police work and to the reasonableness of Officer Ueland's action. In short, the right of Officer Ueland to enter and to investigate in this emergency, without an accompanying intent to search unlawfully, is for me inherent in the very nature of his duties as a responsible peace officer, and

derives from the decisions I have set forth above.

The real reason for the reversal of this case emerges from the mists of Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). It is said by the majority that "[t]he right to search emergency doctrine would under the circumstances of this case be no greater than the right to search incident to a lawful arrest." This statement is apparently founded upon the hypothesis that had "Wagner" (Goldenstein) been in the room, Officer Ueland could not have extended his search beyond Goldenstein's person and the area within his immediate control. Thus, unless Goldenstein had been sitting upon, or standing near, the suitcase, Officer Ueland could not have included its contents within the scope of his search. While all of this may be so, I know of no Supreme Court decision which purports to equate the emergency situation with the search-incident-to-a-lawful-arrest instance. I am therefore unable to understand why the court purports to treat these two separate and distinct exceptions to the warrant requirement interchangeably, and to consider the emergency exception as if it must be governed by the same restrictions as to scope as are implanted on the search-incident-to-arrest exception. That being so, I find it unnecessary to speculate what Officer Ueland could or could not have done had Goldenstein been in the room.

The five Supreme Court decisions which I have set forth above explicitly recognize that the presence of urgent circumstances may in some instances justify and require a warrantless official intrusion into privacy. While the emergency or exceptional circumstances language has been stated in each of these cases, I am frank to admit, in fairness

---

1. The Government, on its brief, tells us that "[n]o magistrate, [j]udge, or other judicial officer is available in the United States at that time and would probably not be available until some time Monday, November 30, two days later." Neither

defendant has seen fit to comment on this assertion.

2. Room 728 was registered to one "Robert Wagner." The police later learned that "Robert Wagner" was, in fact, Ronald Goldenstein, one of the defendants here.

to the majority, that the contours of this exception have not developed and that the Court has never pinned it down to a workable and effective meaning. But surely it was precisely toward providing for such circumstances as are present here that the Court formulated the emergency doctrine. If not, it is difficult indeed to think of a case in which it ever could be applied.

I would affirm.