**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Hal Francis RACHAL and Edward B. Hunnicutt, Defendants-Appellants.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Hal Francis RACHAL, Defendant-Appellant.**

**Nos. 71–2140, 71–2399.**

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1973.

---

15. Cf., Farkas v. Texas Instrument, Inc., 375 F.2d 629 (CA 5, 1967) ; cert. denied, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471.

Hal Francis Rachal, pro se.

Frank Y. Hill, Jr., San Antonio, Tex. (Court appointed), for Hunnicutt.

Seagal V. Wheatley, U. S. Atty., Charles B. Tennison, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEWIN, BELL and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

In No. 71–2140, after a six weeks trial, appellants were found guilty on each of 13 counts in the indictment. The indictment charged both appellants in counts 1–4 with securities fraud [15 U.S.C. § 77q(a)], in counts 5–8 with mail fraud [18 U.S.C. § 1341], in counts 9–12 with sales of unregistered securities [15 U.S. C. § 77e(a)(2)], and in count 13 with conspiracy to violate the above listed statutes in violation of 18 U.S.C. § 371. We affirm the conviction of both appellants under all counts.

## I. Counts 9–12

(a) The charge on "issuer."

These are the counts charging sales of unregistered securities. Appellants claim that the transactions in which they engaged were exempted from the registration provisions of the Securities Act by 15 U.S.C. § 77d(1) which exempts "transactions by any person other

than an issuer, underwriter, or dealer." Appellants were not underwriters or dealers, and they claim that as a matter of law they were not issuers within the definition of 15 U.S.C. § 77b(4), "every person who issues or proposes to issue any security." The trial court instructed the jury that

> In this connection, you are instructed that the term "issuer" means every person who issues or proposes to issue any security, and includes any person who aids, abets, counsels, induces, or causes another person to issue any security, as those terms have been defined to you. The term "person" includes, of course, a corporation as well as an individual.

The first clause of the first sentence is taken directly from § 77b(4), but appellants make a bifurcated argument that this clause is inapplicable to the facts of this case. First, they say that Mooney Corporation, of which they were officers and which they controlled and dominated,[1] was an issuer, and that a corporate officer—a natural person— may not be an issuer under § 77b(4) on the basis of his acts done in a representative capacity for a corporate issuer. Second, they say that they are "control persons" as referred to in § 77b(11) and that, as such persons, they can be issuers under only § 77b(11) which is in terms of dealings with an underwriter, and, there being no underwriter, they were not issuers.

■ Implicit in the first argument is appellants' theory that the word "person" in § 77b(4) can refer only to a corporate body and not to a natural person. A similar argument was made to the Supreme Court, and rejected, in United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), and United States v. Wise, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962). In *Wise* a unanimous Court rejected the arguments

that when a defendant acted in a representative capacity he was not a "person" within § 1 of the Sherman Act imposing sanctions upon "every person" who violates that provision, and that only the corporation for which he acted could be a "person."

This Court was faced with the same problem in United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48, involving the construction of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–392. An earlier version of the Act stated that the acts of a corporate officer would be chargeable both to him and to the corporation. In a 1938 revision the statute made any "person" responsible and specifically included corporations within that term. 52 Stat. 1040. The Court of Appeals reversed the conviction of a corporate officer on the ground that only a corporation was a "person" within the Act. This Court reversed the Court of Appeals, rejecting substantially the same argument that is advanced by the appellee in this case. The reason for the rejection is equally applicable to the case at bar. No intent to exculpate a corporate officer who violates the law is to be imputed to Congress without clear compulsion; else the fines established by the Sherman Act to deter crime become mere license fees for illegitimate corporate business operations. Following Dotterweich, we construe § 1 of the Sherman Act in its commonsense meaning to apply to all officers who have a responsible share in the proscribed transaction. Cf. Carolene Products Co. v. United States, 323 U.S. 18, 21, 65 S.Ct. 1, 89 L.Ed. 15, 155 A.L.R. 1371.

370 U.S. at 409, 82 S.Ct. at 1357, 8 L.Ed. 2d at 593. That reasoning applies here with equal if not more force. To accept appellants' argument would be to eviscerate § 77b(4). We cannot attribute to

---

1. Appellant Rachal was president, chairman of the board, general counsel and a director of the corporation. Appellant Hunnicutt was secretary-treasurer, transfer agent, and a director.

Congress the intent to give so narrow and illusory a scope to the Securities Act.

██ Appellants' reference to § 77b(11) is to this language:

> As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

But by its own terms this expansive enumeration of "issuer" is only for the purpose of paragraph (11), whose subject matter is not the imposition of criminal responsibility (that being the subject matter of § 77e), but the definition of underwriter. Paragraph (11) does not purport to limit the definition of issuer in paragraph (4); rather it delineates for the purpose of defining underwriter a broader group in which are included paragraph (4) issuers and control persons as well.[2]

 The aider and abettor portion of the quoted instruction is technically incorrect. The criminal responsibility of aider and abettor of an issuer would spring from aiding and abetting the commission of an offense by the principal issuer or wilfully causing a proscribed act to be done by the issuer, 18 U.S.C. § 2, and not from expansion of the term "issuer" to include all who aid and abet an issuer. Appellants, however, do not contend that in the sales charged there was no principal who was

an issuer nor do they say that they did not perform any acts within the proscription of § 77e. To the contrary, they urge as affirmative grounds for nonliability that Mooney Corporation was the issuer, and that the acts for which they were convicted were performed in their representative capacities as corporate officers, which conduct, they say, as a matter of law cannot make them issuers. Their objections to the aider and abettor instruction are part and parcel of their erroneous legal concept that it is impossible for a corporate officer to be an issuer except under paragraph (11). They do not deny the facts but affirm the facts in quest of an [erroneous] claim of certain legal consequences flowing from the facts. In this context, the inaptly worded charge could not have prejudiced appellants.[3]

For the same reasons above discussed, the trial court was not required to grant appellants' motions for directed verdict on the basis that as a matter of law they could not be issuers, and it did not err in denying requests for instructions concerning exempt transactions which embraced appellants' erroneous issuer theory.[4]

(b) The charge on exempt securities.

██ A note is a security within the Securities Act, 15 U.S.C. § 77b(1), but certain short-term notes are exempted by § 77c(3), "[a]ny note . . . which arises out of a current transaction or the proceeds of which have been or are to be used for current transac-

---

2. A control person who is not a paragraph (4) issuer may be guilty of violating the Act by engaging in a proscribed *transaction* with a paragraph (11) underwriter, United States v. Wolfson, 405 F.2d 779 (2nd Cir. 1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969). His criminal liability does not exist, however because he is within the paragraph 11 penumbra given to the word "issuer", but because he is a participant in a non-exempt transaction. *Id.*

3. Numerous persons may be only peripherally related to corporate issuance of un-

registered securities. Since appellants were high-level corporate officers in control of the corporation, we need not for this appeal attempt to define the outer limits of aider and abettor criminal liability under the Securities Act.

4. The conspiracy charged in count 13 included allegations of violations of § 77e (a)(2). Thus appellants' challenges to the jury charges given on counts 9–12 also challenge the verdicts of guilty under count 13. What we have said as to counts 9–12 disposes of the matter as to count 13 also.

tions, and which has a maturity at the time of issuance of not exceeding nine months. . . ." Appellants make the argument, by use of various principles of the common law and the Uniform Commercial Code, that a notation, which we set out in the margin,[5] on the back of each Mooney Corporation stock certificate imparted to the security the character of a short-term note exempted under § 77c(3), which made erroneous the following jury instruction:

> This exemption was intended by Congress to cover that type of commercial paper available for discount at a Federal Reserve Bank, not generally sold to the public or advertised for public sale. It applies only to such notes, usually high quality commercial paper, as arise out of current transactions and are hence covered by assets readily convertible into cash. The exemption does not apply to common capital stock or an instrument which has the characteristics of such stock generally, regardless of what other characteristics it may have.

This charge did not give a more restrictive interpretation to the term "any note" and to the ambit of the note exemption than Congress intended. It accurately conveyed the legislative intent and even incorporated verbatim language of the legislative history documents. *See* H.R.Rep.No.85, 73rd Cong., 1st Sess. 15 (1933) and S.Rep.No.47, 73rd Cong., 1st Sess. 3–4 (1933).[6]

For the same reasons, the court correctly denied requested charges setting out appellants' theory concerning the note exemption.

II. Newly discovered evidence.

Twenty-seven days after verdict appellants filed a motion for new trial on the basis of newly discovered evidence consisting of corporate records. They were entitled to have their motion granted only if they met the burden of showing the existence of four prerequisites:

> (1) that the evidence was newly discovered and was unknown to the defendants at the time of the trial; (2) that the evidence was material, not merely cumulative or impeaching; (3) that it would probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendants.

Hudson v. United States, 387 F.2d 331 (5th Cir. 1967); 2 Wright, Federal Practice & Procedure, § 557 p. 515. Appellants rely upon Brodie v. United States, 111 U.S.App.D.C. 170, 295 F.2d 157 (1961), as authority that the standard applicable to their motion was that of the first sentence of Rule 33, Fed.R. Crim.P., i. e., whether "in the interest of justice" a new trial should be granted. But that case pointed out the distinction in Rule 33 between motions for new trial based on newly discovered evidence, which may be made within two years of judgment, and motions for new trial based on other grounds, which must be made within seven days after verdict, and it recognized the heavier burden which the movant must carry in a motion of the former type. See 8A, Moore, Federal Practice & Procedure, ¶ 33.-02–.03.

---

5. "Stock may be hypothecated without limitation, but may be sold only to the issuer who will pay the greatest of the following:
　　1. The highest price per share ever received by Mooney Aircraft, Inc., not to exceed a total of $10,000.00 to any shareholder (including co-tenants, joint tenants, partnerships and trusts) during any fiscal year; or

　　2. The book value per outstanding share at the expiration of the last fiscal year, using the income tax return for the purpose of determining net worth; or
　　3. Par value."

6. The Senate bill was significantly similar to the House bill ultimately enacted.

■ The District Court correctly applying the four-part standard, did not err in denying the motion on the ground that the corporate records said to be newly discovered evidence were in fact known to appellants during trial and could have been obtained by them through exercise of due diligence. The District Court also correctly found that in other respects the four-part standard was not met, but we need not discuss these since failure to meet any one of the four prerequisites required denial of the motion.

### III. Cross-count prejudice.

■ ■ Appellants claim that they were reversibly prejudiced in their defense of counts 1–8 because of allegedly erroneous instructions given by the court concerning counts 9–13. The hypothesis for this claim is wrong. What we have already said covers the correctness of the charges except for that charge describing the purposes and scope of the registration requirements of the Securities Act of 1933. A substantially equivalent charge was held valid in United States v. Parrott, 425 F. 2d 972 (2d Cir. 1970). We agree with the Second Circuit that such instruction was useful to give the statute coherence in the eyes of the jurors, some of whom may have had no experience with buying, selling or owning securities.

The convictions in No. 71–2140 are affirmed.

No. 71–2399 is an appeal by Rachal only from interlocutory orders restraining him from transferring or dissipating assets, ordering him to deposit into court funds for court costs, and to pay part of the costs of a transcript. In all respects the District Court is affirmed. See Local Rule 21.[7]

7. See NLRB v. Amalgamated Clothing Workers of America, 5 Cir., 1970, 430 F.2d 966.