STANDARD OIL COMPANY et al., Appellants,

v.

STATE OF IOWA et al., Appellees.

No. 19355.

United States Court of Appeals Eighth Circuit.

April 8, 1969.

Edward F. Howrey, of Howrey, Simon, Baker, & Murchison, Washington, D. C., for Mobile Oil.

Robert J. Woolsey, of Farmer, Woolsey, Flippo & Bailey, Tulsa, Okl., for Wilshire Oil Co.

Robert W. Brennan, Stewart, Miller, Wimer, Brennan & Joyce, Des Moines, Iowa, George T. O'Laughlin, Miller & O'Laughlin, Kansas City, Mo., for Union Asphalt & Roadoils, Inc.

D. J. Goode, Parrish, Guthrie, Colflesh & O'Brien, Des Moines, Iowa, M. J. Keating, Walter T. Kuhlmey, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for Standard Oil Co. (Indiana).

J. Rudolph Hansen, John A. McClintock, Hansen, Wheatcraft & McClintock, Des Moines, Iowa, Lynn Adams, Oklahoma City, Okl., for Kerr-McGee Corp. and General Asphalts, Inc.

Herschel G. Langdon, Herrick, Langdon, Belin & Harris, Des Moines, Iowa, Verne H. Maxwell, Dallas, Tex., Colvin

A. Peterson, Jr., Watson, Ess, Marshall & Enggas, Kansas City, Mo., for American Petrofina, Inc.

John R. Mackaman, Dickinson, Throckmorton, Parker, Manheimer & Raife, Des Moines, Iowa, Charles F. Rice, New York City, Edward F. Howrey, A. Duncan Whitaker, Richard T. Colman, Howrey, Simon, Baker & Murchison, Washington, D. C., for Mobil Oil Corp.

Eugene Davis, Duncan, Jones, Riley & Davis, Des Moines, Iowa, William C. Weitzel, Jr., New York City, for Texaco, Inc.

Donald A. Wine, Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, J. R. Shanahan, Chicago, Ill., Donald K. McIntosh, New York City, for Sinclair Refining Co.

David E. Byers, Des Moines, Iowa, John F. Smith, Kansas City, Mo., for Skelly Oil Co.

Paul F. Ahlers, Bannister, Carpenter, Ahlers & Cooney, Des Moines, Iowa, Lewis J. Ottaviani, Bartlesville, Okl., Leroy Jeffers, Vinson, Elkins, Weems & Searls, Houston, Tex., for Phillips Petroleum Co.

Robert G. Bridges, Bridges & Bridges, Des Moines, Iowa, James R. Eagleton, Hunt, Eagleton & Eagleton, Tulsa, Okl., for Carey Farms Co. (Known as Riffe Petroleum Company from 9/19/63 through 7/27/67).

Roy W. Meadows, Whitfield, Musgrave, Selvy & Kelly, Des Moines, Iowa, C. T. McClure, Oklahoma City, Okl., for Apco Oil Corp.

Bennett A. Webster, Gamble, Riepe, Martin & Webster, Des Moines, Iowa, Charles W. McDermott, Colorado Springs, Colo., Joseph W. Kennedy, Morris, Laing, Evans & Brock, Wichita, Kan., for Colorado Oil & Gas Corp. (Derby Refining Co.).

Frank W. Davis, Davis, Huebner, Johnson & Burt, Des Moines, Iowa, Robert J. Woolsey, Lawrence A. Johnson,

Farmer, Woolsey, Flippo & Bailey, Tulsa, Okl., for Wilshire Oil Co. of Texas.

J. O. Watson, Jr., Watson, Elgin & Hoyman, Indianola, Iowa, Elmer B. Hodges, Gage, Hodges, Park & Kreamer, Kansas City, Mo., for Carter-Waters Corp.

J. Riley McManus, Des Moines, Iowa, Neil E. McManus, McManus & McManus, Keokuk, Iowa, for Petroleum Trading, Inc.

Theodore T. Duffield, James A. Lorentzen, Patterson, Lorentzen, Duffield, Timmons, Wright & Irish, Des Moines, Iowa, for Pioneer Asphalt Co. and Central States Oil and Asphalt Co., Inc.

Roger H. Ivie, Special Asst. Atty. Gen., Des Moines, Iowa, for appellees; Richard C. Turner, Atty. Gen., Des Moines, Iowa, with him on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is an interlocutory appeal by the defendants from portions of an order of the trial court filed March 14, 1968, which denied certain relief sought by defendants in their motions to suppress evidence claimed to have been illegally seized. The order appealed from is incorporated in the trial court's memorandum opinion reported sub nom. State of Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391, 404–411.[1]

We permitted this interlocutory appeal to be taken pursuant to 28 U.S.C.A. § 1292(b) certification by the trial court.

The State of Iowa and Iowa State Highway Commission commenced this case as a class action against twenty-one defendants on their behalf and for the benefit of all State agencies and political subdivisions of the State for treble damages for conspiracy to unlawfully fix prices in violation of the Sherman Act and the Clayton Act in the sale of as-

---

1. The opinion also passes upon an issue relating to attorneys' fees which is before us on a separate appeal and a motion to dismiss class action. Neither of such issues is involved in the present appeal.

phalt to the State of Iowa, its agencies and subdivisions. The motions to suppress evidence are broad and based upon the unlawful seizure of records of four defendants, to wit, Pioneer Asphalt Company, Central States Oil and Asphalt Company, Inc., Bituminous Materials & Supply Co., and Bitucote Products Co. The trial court determined upon the basis of substantial evidence appearing in the record that the records and property of the four defendants just named were illegally seized by the State of Iowa in violation of the Fourth Amendment constitutional rights of such defendants and that the motions of the four defendants to suppress evidence seized from each of them should be granted and plaintiffs were ordered to return all items seized to such defendants together with all copies made from the seized items. The basis of the ruling is fully set out in the trial court's opinion.

Plaintiffs now concede that the seizures made from the four defendants were illegal and plaintiffs do not contest the order directing the return of the seized property and copies thereof to defendants from whom the property was wrongfully taken. Plaintiffs have complied with the order for the return of the items seized and copies thereof.

The court further held:

"It is further ordered that the plaintiffs may not in any manner use the seized items or any knowledge gained by the illegal searches against the party from whom the knowledge was gained or the items seized, except that the plaintiffs may make use of all evidence and knowledge if it is gained from an independent source." 281 F. Supp. 391, 411.

Defendants on this appeal contend that the court erred in denying the relief sought in their motions in the following respects: (1) In holding that defendants other than the four defendants whose premises were unlawfully searched had no standing to suppress evidence illegally obtained from their co-defendants. (2) In holding that some documentary material illegally seized from the four defendants and information obtained therefrom may be reacquired through normal discovery methods by the party who perpetrated the unlawful search.

We find for the reasons hereinafter stated that the trial court committed no error in entering the order that it did.

 The troublesome question of whether a co-defendant whose Fourth Amendment rights have not been violated has standing to suppress evidence illegally seized from a co-defendant has been authoritatively answered by the Supreme Court in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (decided March 10, 1969). The Court in that case in the majority opinion held that the exclusionary rule of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R. 933, extends only to a party from whom the evidence was illegally obtained and squarely holds that evidence illegally obtained from one defendant is not excludable against a co-defendant whose constitutional rights have not been violated by the search and seizure. The Court states:

"In *Mapp* and *Weeks* the defendant against whom the evidence was held to be inadmissible was the victim of the search. However, in the cases before us each petitioner demands retrial if any of the evidence used to convict him was the product of unauthorized surveillance, regardless of whose Fourth Amendment rights the surveillance violated. At the very least, it is urged that if evidence is inadmissible against one defendant or conspirator, because tainted by electronic surveillance illegal as to him, it is also inadmissible against his codefendant or coconspirator.

"This expansive reading of the Fourth Amendment and of the exclusionary rule fashioned to enforce it is admittedly inconsistent with prior cases, and we reject it. The estab-

lished principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." 394 U.S. 171, 89 S.Ct. 965, 22 L.Ed.2d 185.

After reviewing pertinent authorities, the Court observes:

"We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.

\* \* \* \* \* \*

"There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party. The victim can and very probably will object for himself when, as and if it becomes important for him to do so.

\* \* \* \* \* \*

"The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth." 394 U.S. 174, 89 S.Ct. 967, 22 L.Ed.2d 187.

■ *Alderman* is a criminal case. The case before us is a civil case for treble damages for antitrust violations. Obviously the rules as to standing in a civil case would rise no higher than those governing criminal cases. We hold that the right to suppress evidence illegally seized is limited to the four defendants from whom the seizure was made and that the remaining defendants lack standing to suppress evidence illegally seized from a co-defendant under the facts and circumstances shown by the record where no Fourth Amendment rights of the objecting co-defendants have been violated.

■ Defendants' alternate contention that the four defendants with standing to object would be prejudiced by the admission of the fruits of the illegal search against their co-defendants in a joint trial is premature. There is no certainty at this time that defendants with standing to object and defendants lacking standing will be jointly tried. Provision is made by Rule 42(b), Fed.R. Civ.P., for separate trials to avoid prejudice. As observed by the Sixth Circuit in United States v. Graham, 6 Cir., 391 F.2d 439, 446–447:

"[T]he defendant who independently has and successfully invokes the right to move for suppression, would normally be successful in obtaining a severance to avoid possible prejudice. Had each defendant in the instant case been tried separately, or had Edge been granted a separate trial, appellants clearly would have lacked standing to object to the introduction of the fruits of the 'search' of the cars. To hold to the contrary at this time, merely because of the joint trial, would give them a windfall to which they are not justly entitled."

■ In any event, no adequate information is contained in the record as to the specific nature of evidence if any which might in a joint trial be admissible against some but not all defendants and lacking such information, it would be impossible to judge with any reasonable degree of certainty the effect of the undisclosed evidence upon a defendant as to whom the evidence was inadmissible. The prejudicial effect of evidence admissible to some defendants upon a defendant who has standing to ex-

clude the evidence can only be determined upon a record showing the specific evidence that is involved and the objections made thereto in light of the entire record made in the case, including such limiting instructions as the court may give.

No sound basis exists on the record before us for a final determination at this time that the fruits of the illegal search should not be admissible against a defendant who lacks standing to object to such evidence. If defendants with standing to object and defendants lacking standing are jointly tried, nothing said herein should preclude the trial court from making such determinations on the admissibility of evidence tendered as the record then before it may require.

The final issue raised by the appeal is whether documents or items wrongfully seized may be reacquired through normal discovery methods by plaintiffs who had perpetrated the unlawful search and seizure. This issue applies only to the four defendants whom we have heretofore held have standing to object to the use of items illegally seized from them.

The Supreme Court in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, determines that the essence of the prohibition forbidding the obtaining of evidence by an illegal search violative of the Fourth Amendment "is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." Immediately following, the Court goes on to say, "If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed."

The trial court's opinion sets out the above quotation as the standard and then seeks to determine whether information that would be readily disclosed by ordinary available discovery procedure without the benefit of the information illegally obtained would constitute information gained from an independent source.

The court, relying upon Lord v. Kelley, D.C.Mass., 223 F.Supp. 684, and other cases it cites, holds:

"Looking to the factors considered in Lord v. Kelley, as weighing in favor of a limited suppression order, it is well to point out here that the government has tacitly admitted wrongdoing, that the illegal method of gaining access to the corporate records was unique and will not soon occur again, and that the defendants have vindicated the right to be free from misuse of statutes as a means of violating constitutional rights. A limited suppression order is far short of immunity but it is not a futile gesture. The relief to be granted in this case complies with the exclusionary rules as they now stand. In some cases a limited suppression order is of great benefit to the complainant while in others the impact is less. It is not the duty or the inclination of this Court to ensure the greatest effect. The defendants will be restored to their earlier position but will not gain immunity. In ruling on any discovery motions by the plaintiffs, the Court will take care to prevent, insofar as possible, the use of illegally obtained information." 281 F.Supp. 391, 410.

The District Court in Lord v. Kelley, supra, aptly states:

"The only ground for suppressing the use of these records in evidence is not to allow the Government to gain advantage from violating the Bill of Rights and those high standards of fair play which should govern men entrusted with official power. The owner of the records is entitled to be as well off as if Flattery had not unlawfully seized those papers, but he is not entitled to be any better off. He is not entitled to gain perpetual immunity from ever responding, in any future criminal proceeding or civil suit or administrative, tax inquiry, to an appropriate summons to produce those records which the tax statute require him to keep and which before the un-

lawful seizure the Government knew he had." 223 F.Supp. 684, 691.

The First Circuit in affirming sub nom. McGarry's, Inc., v. Rose 1 Cir., 344 F.2d 416, 419, holds:

"The order of the district court herein is not violative of any asserted rights of appellants. It is consistent with the doctrine of the *Silverthorne Lumber, Nardone,* and *Wong Sun* [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441] cases. To strike down the district court's order on the facts of this case would be a perversion of the Fourth Amendment conferring upon appellants a windfall benefit far beyond anything required by the Fourth or Fifth Amendments. Cf. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1953)."

In the subsequent case of McGarry v. United States, 1 Cir., 388 F.2d 862, 871, it had occasion to speak on the issue again as follows:

"It is clear to us that this is not a case where an illegal search has revealed unsuspected data which is sought to be blanketed under a later 'legal' subpoena.

\* \* \* \* \* \*

"To impose the greater sanction of permanent immunization whenever a seizure of ordinary business and corporate records has been invalidated would place an incommensurate burden on the government, unnecessary for the protection of commercial privacy."

While as pointed out by the trial court at pp. 409–410 of 281 F.Supp. there is authority to the contrary, we are impressed like the trial court with the reasoning of the cases heretofore cited and quoted.

■ An independent source could consist of information obtained through authorized discovery proceedings or otherwise from co-conspirators lacking standing or from other states which had instituted similar litigation or from any other legitimate independent sources.

From the reasoning of the trial court, it would appear that in its view an independent source would include information available to the plaintiffs without resort to any clue or knowledge gained from the items unlawfully seized. Such appears to be a proper standard.

■ We believe the court went as far as it reasonably could on the present record in suppressing evidence illegally seized by ordering the return of the seized evidence with all copies made thereof and in directing that the plaintiffs may not in any manner use the seized items or any knowledge gained therefrom against the four defendants who were victims of the seizure, except as to knowledge gained from an independent source.

Opportunities for discovery are far broader under the rules of civil procedure than under the rules of criminal procedure. Plaintiffs' affidavit for the warrant resulting in the illegal seizure sought the impounding of "all records, books, correspondence, documents and accounts" of the four defendants. The fact that plaintiffs did not go through the proper procedure to obtain such evidence does not negative plaintiffs' knowledge of the existence of the items held by the defendants which they needed in support of their case. Moreover, as stated in *McGarry,* even an inexperienced investigator would ask for such records.

The vacuum in the record with respect to what evidence plaintiffs may seek to produce, its relationship to the items seized, the source of plaintiffs' independent information if any, apart from that gained from the illegally seized items, makes any definitive ruling impossible on the issue of whether the evidence attempted to be used is based upon an independent source.

As heretofore pointed out, the trial court in its opinion declared "in ruling on any discovery motions by plaintiffs, the Court will take care to prevent, insofar as possible, the use of illegally obtained information." This is as far as the court could reasonably go under

the circumstances disclosed by the record. If upon the trial, the court should fail to apply the applicable law as stated in its opinion and approved by us with respect to any question of admissibility of evidence that may arise, any error in such respect will of course remain open for review upon appeal from final judgment.

Defendants have failed to establish that the court committed any error in entering the order appealed from.

Affirmed.