**UNITED STATES of America,**
**Plaintiff,**

v.

**Daniel E. HEISMAN, Defendant.**

**UNITED STATES of America,**
**Plaintiff,**

v.

**Michael Ray RADFORD, Defendant.**

Nos. 73 Cr 222(3), 73 Cr 225(3).

United States District Court,
E. D. Missouri, E. D.

Feb. 1, 1974.

John L. Boeger, St. Louis, Mo., for defendant Heisman.

Irvin L. Ruzicka, St. Louis, Mo., for defendant Radford.

Terry I. Adelman, Asst. U. S. Atty., St. Louis, Mo., for the United States.

## JUDGMENT

WANGELIN, District Judge.

These criminal actions were initiated by indictments filed on August 2, 1973. Count I of the indictment against the defendant Radford charges him with intent to defraud through the keeping in his possession and the concealment of certain falsely made, forged and counterfeited ten dollar denomination Feder-al Reserve Notes in violation of 18 U.S. C. Section 472. Count II of the indictment against Radford charges him with willful and knowing receipt of counterfeit notes with the intent to pass and publish the same as true and genuine Federal Reserve Notes in violation of 18 U.S.C. Section 473. Count I of the indictment against the defendant Heisman charges him with intent to defraud through the counterfeiting of ten dollar denomination Federal Reserve Notes in violation of 18 U.S.C. Section 471. Count II of the indictment against Heisman charges him with the willful and knowing sale, transfer and delivery to defendant Radford of said ten dollar denomination Federal Reserve Notes with intent same be passed and used as true and genuine notes in violation of 18 U. S.C. Section 473.

Both defendants pleaded not guilty to the aforesaid charges.

These actions are before this Court for trial as both defendants waived their right to a trial by jury. This Court held an evidentiary hearing for determination of defendants' joint motions to suppress evidence on August 24th and 27th, 1973. Such motions were denied on September 6, 1973. The parties have stipulated that all testimony and exhibits identified at the hearing on said motions shall be taken as evidence adduced in the Government's case at trial. This Court will consider both the evidence and exhibits adduced at the evidentiary hearing and the parties "Stipulation of Facts" to determine the findings of facts.

The Court being fully advised in the premises, makes the following findings of fact and conclusions of law.

### General Findings

The Court finds the defendant, Michael Ray Radford, guilty of the violations charged in the indictment filed in Criminal Action No. 73 Cr 225(3).

The Court finds the defendant, Daniel E. Heisman, guilty of the violations charged in the indictment filed in Criminal Action No. 73 Cr 222(3).

*Special Findings*

1. Paul Kesterson and defendant Heisman were co-tenants of the premises at 1620 South Broadway, St. Louis, Missouri.

2. Both Kesterson and Heisman had signed the lease to the premises and were liable for the whole rent.

3. Kesterson and Heisman operated individual businesses which were financially independent of each other.

4. The premises at 1620 South Broadway consisted of a one floor office building with four partitioned sections containing no doors: the front area was a common office area, in the second section Heisman kept his supplies, in the third section Kesterson kept his printing press and supplies, and the fourth area was used primarily by Kesterson.

5. Both Kesterson and Heisman had keys to the premises at 1620 South Broadway.

6. Prior to July 26, 1973, both Kesterson and Heisman had access to each other's rooms, supplies and equipment.

7. Before Kesterson departed on a trip, prior to July 26, 1973, Heisman asked for permission to use his printing press during his absence for the purpose of printing contract forms.

8. On July 26, 1973, Kesterson returned from his trip to the premises of 1620 South Broadway where he discovered on the printing press mat four impressions of ten dollar bills, whereupon, he called the United States Secret Service, who went to the premises and observed said impressions. Such ten dollar bills contain the same serial numbers and were of the same series as the counterfeit ten dollar denomination Federal Reserve Notes described in the indictment. Moreover, the impressions of the ten dollar bills were counterfeit.

9. The Secret Service agents took the mat from the press containing the counterfeit impressions and also observed such impressions on the back-up cylinder of the press.

10. Kesterson told the Secret Service agents that Heisman had asked to use his press to print green contract forms, that he was the only one with access to the printing press, and that he had a key to the premises.

11. The Secret Service agents arranged with Kesterson to return to the premises the following morning, July 27, 1973, to photograph the back-up drum of the press. Upon their return at 7:15 a. m., July 27, 1973, the back-up drum of the press had been cleaned and the printed images were erased. The agents asked Kesterson for permission to search the premises and such was granted as Kesterson believed he had access to the entire premises.

12. Agent Gilmore searched the second partitioned section where Heisman kept his supplies and which contained twelve to fifteen boxes. He opened one of the boxes therein and discovered a quantity of counterfeit treasury bills. Such box on its exterior had a picture of a red apple and the contents had not been visible before the box was opened. Agent Gilmore seized one sheet of counterfeit money, whereupon, the agents left the premises and put it under surveillance.

13. In the afternoon defendant Radford drove an automobile up to the rear of 1620 South Broadway. The agents observed Radford place a box with a red apple on its exterior into the trunk of the automobile, while Heisman remained just inside the doors of the building. After this action by Radford, seven Secret Service agents converged upon the defendants with guns drawn and placed Radford and Heisman under arrest.

14. After the arrest, Radford was given his *Miranda* warnings and he acknowledged that he understood his rights. Moreover, he was told that he did not have to consent to the search of his car, was read the consent to search form and signed the form. A search of Radford's car was conducted, whereupon, the box with the red apple was obtained from the trunk. Such box contained one hundred and forty thousand dollars in

ten dollar counterfeit Federal Reserve Notes.

15. Upon leaving the rear premises of 1620 South Broadway the agents took Radford to his home and with his consent recovered an additional one thousand dollars in counterfeit Federal Reserve Notes. Such notes were in ten dollar denominations and were of the same serial number and series number as those described in the indictment.

16. Sometime after the arrest, the defendant Radford after a knowing waiver of his rights gave a voluntary written statement to the agents. The following is the said statement:

I Michael Radford have been advised of my rights by Special Agent Richard Gilmore and Robert Rasor, and I fully understand them. I am making this statement voluntarily, no threats or promises have been made to me. Michael Radford.

Approximately three weeks ago Daniel Heisman approached me and asked if I would be interested in counterfeit money. I asked him what kind of deal he was proposing. He said he would print the money and give it to me for $10,000. I told him I had no money and no means (sic) moving the money. He said I could keep it and hold it until such time as I could exchange it and pay him. I told him yes I would do that. I asked if he had it and he said no he would have it.

He mentioned it briefly on several occasions.

On Wednesday Night July 25, 1973 he (Heisman) came to my apartment in I assume his Mach I Mustang (Ford). He stayed at my apartment 1916 President # A and brought with him a stack of $10 counterfeit bills. He said there was $1,000 there. When I left my apartment on Thursday morning, his Mustang was outside my apartment. Color was Greenish/yellow with Mach I on the side.

Thursday night July 26, 1973 we had a brief conversation in his car outside Country Place, Bar, 3101 S. Broadway, St. Louis. We discussed moving the counterfeit money out of the print shop. We agreed to move it to my apartment on Friday afternoon July 27, 1973. He spent Thursday night July 26, 1973 at my apartment.

On Friday July 27, 1973 I went to his business 1620 S. Broadway. We, Heisman and I, put the counterfeit money in the trunk of my Cadillac at which we were arrested. This statement is true and to the best of my knowledge.

SA Richard Gilmore

Michael Radford

17. Heisman was also given his *Miranda* warnings and after a knowing waiver of his rights gave a voluntary written statement to the agents. The following is the said statement:

July 27, 1973

4:00 pm

I, Daniel Edwin Heisman, having been duly advised of my Constitutional Rights against self-incrimination, do wish to make the following statement:

During 1971, I made all the negatives for these counterfeit bills at Baptist Church of the Good Shepard, 2924 Locust, St. Louis, Missouri. I used their camera and their equipment. I kept these same negatives within my personal files from the time I made them until now.

I did not use these negatives nor allow anyone else to use these negatives until July 16, 1973 when, I alone, began making the plates to print the counterfeit notes. I made the plates and completed the printing of these counterfeit notes on these dates: Afternoon of July 16, 1973; between 3 pm and 6 pm of July 23, 1973; and between 3 pm and 6 pm of July 24, 1973. I used the equipment which is located at 1620 South Broadway, St. Louis, Missouri. I pay (⅓) of the rent for the lease of this same building.

During June of 1973, I met with Michael Radford and we discussed

these counterfeit negatives I made during 1971. A couple of days later, we met again and discussed this same subject. He offered me approximately $10,000 if I would print $250,000 in counterfeit $10 notes for him. We discussed this same subject often during the next month. On approximately July 12, 1973, I showed Radford the ink samples I planned on using to print these notes.

On July 9, 1973, I purchased 7,000 sheets of 8½″ x 11″ 2416. green. offset paper for $60 from Tobey Fine Papers located at 1424 Talmage, St. Louis, Missouri. I used approximately 6,000 sheets of this same paper to print these counterfeit notes.

On July 24, 1973 after I printed about $230,000 worth of these $10 counterfeit notes, I cut about $1,000 worth of these same counterfeit notes with a razor and T-square for use as sample notes. I then transported these same $1,000 in eft (sic), $10's in my 1972 Mach I Mustang from 1620 S. Broadway to 1916 President, St. Louis Mo. I showed these samples to Michael Radford and he tested a couple of these same samples. Michael Radford stated to me that he intend to pass some of these notes and stash the rest away. His intent was the same for the remainder of these counterfeit notes. We discussed cutting the rest of these notes up, but Michael Radford thought that it would be safer if he took the notes out of the shop (1620 S. Broadway, St. Louis, Mo.) to an undisclosed location. I assumed that he was taking them to his home. Michael advised me that he would give me some money as he passed the counterfeit $10 notes. I did not pass any of these counterfeit notes and to the best of my knowledge neither did Michael Radford.

### Conclusions of Law

■ Count I of the indictment against Radford charges him with the violation of 18 U.S.C. Section 472, which provides:

Uttering counterfeit obligations or securities

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

From the evidence it is clear that the defendant Radford with intent to defraud kept in his possession at his apartment one thousand dollars in counterfeit Federal Reserve Notes. Moreover, Radford's written statement demonstrates that he was cognizant of the fact that such notes were spurious.

■ Count II of the indictment against Radford charges him with violation of 18 U.S.C. Section 473, which provides:

Dealing in counterfeit obligations or securities

Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

Again, the evidence is unmistakable that Radford received the counterfeit notes from Heisman. Both defendants in their written statements indicate that Heisman transferred one thousand dollars in counterfeit notes and Radford did receive same. Moreover, the evidence shows that Radford received the notes for the purpose of passing the same as true and genuine. In his written statement Radford said that the agreement with Heisman was that he would not have to pay him until ex-

changes of the counterfeit notes were made. Furthermore, it can be inferred from the receipt of the notes that there would be some mode of passing them as true and genuine.

Accordingly, this Court finds that the defendant Radford is guilty beyond a reasonable doubt as to the charges in the indictment.

■ Count I of the indictment against Heisman charges him with the violation of 18 U.S.C. Section 471, which provides:

§ 471. Obligations or securities of United States

Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

There can be no doubt that the Heisman did the counterfeiting of the notes. The circumstances alone point out this fact. He had access and permission to use the press for the supposed printing of green contract forms. Moreover, his written statement admits and explains his preparation before and printing of, the counterfeit notes.

■ Count II of the indictment against Heisman charges him with the violation of the aforestated Section 473 of Title 18, United States Code. Again the evidence and written statements show that Heisman wilfully and knowingly did sell, transfer and deliver the notes to Radford. Furthermore, Heisman transferred the notes to Radford with the intent that they be passed as true and genuine. From his written statement Heisman knew that Radford was going to pass them as legal tender. It can be inferred that a counterfeiter does not sell his spurious creation to another without the intent that it shall be passed as true and genuine.

Accordingly, this Court finds that the defendant Heisman is guilty beyond a reasonable doubt as to the charges in the indictment.