**UNITED STATES of America,**
**Appellee,**

v.

**Daniel E. HEISMAN, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Michael Ray RADFORD, Appellant.**

**Nos. 74-1253, 74-1204.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Oct. 10, 1974.

Irvin L. Ruzicka, St. Louis, Mo., for appellant Radford.

James F. Malone, St. Louis, Mo., for appellant Heisman.

Terry I. Adelman, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendants Daniel E. Heisman and Michael Ray Radford were indicted and tried by the district court on separate

counts alleging violations by Heisman of 18 U.S.C. §§ 471, 473 (counterfeiting and transfer of counterfeit Federal Reserve Notes with intent to defraud) and by Radford of 18 U.S.C. §§ 472, 473 (receiving and possessing counterfeit Federal Reserve Notes with intent to defraud.)

Defendants entered pleas of not guilty and waived trial by a jury. They were jointly tried by the court. It was stipulated that the evidence in a suppression hearing be considered as evidence at the trial. Certain exhibits were received in evidence by stipulation and pertinent facts were stipulated. The court found both defendants guilty as charged and they were sentenced to six-months imprisonment on the first counts respectively, followed by five-years probation on the second counts. Each defendant has taken a timely appeal from his conviction.

The trial court's reported memorandum opinion (United States v. Heisman, et al., 371 F.Supp. 813 (E.D.Mo.1974)), sets out in considerable detail the trial court's findings of fact and the basis of the judgment of conviction against each defendant. There is ample evidence in the record to support the convictions. The critical issue on each appeal is whether the trial court committed prejudicial error in its rulings on motions to suppress evidence. We will summarize the evidence relating to such issue.

Defendant Heisman and one Paul Kesterson were co-tenants in a leased commercial building in St. Louis, Mo. Both men had signed the lease and were liable for the entire rent. The two men were not in business together and occupied separate areas of the building. The single-story building consisted of four separate areas including a common reception area in the front, a common storage and restroom area in the rear, a room in which Mr. Kesterson kept his equipment and supplies, and a room where Heisman kept a desk and his supplies. Heisman is a commercial artist. There was no door in the doorway to Heisman's room.

Prior to July 26, 1973, Kesterson had given Heisman permission to use a printing press which was owned by Kesterson. On July 26, 1973, Kesterson returned home from a trip and observed green ink and counterfeit ten-dollar Federal Reserve Note impressions on his press. He immediately notified the Secret Service whose agents went to the premises the same day and observed the counterfeit impressions on the press. Special Agent Dickerson seized the mat containing the impressions from the press. Kesterson told the Secret Service agents that Heisman had been given permission to use the press and that he was the only one who had access to the press during the time he (Kesterson) was gone. When the agents returned the next day, July 27, 1973, to photograph the impressions, they discovered that the drum of the press had been cleaned and the printed images erased. After a search of the press room, the agents sought and received permission from Kesterson to search Heisman's room. A search of Heisman's room revealed an unsealed box bearing a picture of a large red apple on the outside containing some $140,000 in counterfeit Federal Reserve Notes. Special Agent Gilmore, who conducted the search, removed one sheet of counterfeit money from the box. On the basis of this evidence the agents succeeded in obtaining an arrest warrant for Heisman that same day.

After discovering the counterfeit money, the agents decided to keep the building under surveillance. That afternoon the agents observed defendant Radford placing a box bearing a picture of a large red apple into the trunk of his car at the rear of the printing shop. Heisman was standing in the door of the print shop at the time. Both defendants were then taken into custody immediately by Dickerson. Agent Gilmore was a part of the surveillance team but did not participate in the actual arrest. There was evidence that Agent Dickerson had learned from another agent, presumably

Agent Gilmore who had conducted the search of Heisman's room, that a box bearing a picture of a large red apple contained counterfeit money.[1]

Both defendants made written incriminating statements after the *Miranda* warnings were read to them. The full text of these confessions is reported in United States v. Heisman, *supra*, 371 F. Supp. at 816–817. In addition, Radford signed a "Waiver of Constitutional Rights, Permission to Search Premises" form provided by the Secret Service agents. A subsequent search of Radford's car trunk produced a box (the red apple box) full of counterfeit Federal Reserve Notes.

Prior to trial, the defendants filed joint motions to suppress all evidence pursuant to Rule 41(e), Fed.R.Crim.P. "obtained as a result of leads supplied by such evidence obtained, procured or prepared as a result of an unlawful search without a search warrant of defendant's office. . . . " An evidentiary hearing was held and the court denied defendants' motions to suppress.

On appeal defendant Heisman contends: (1) that the trial court should have granted the motion to suppress evidence as to him because co-tenant Kesterson lacked legal authority to consent to a warrantless search of his (Heisman's) office area; and (2) that certain oral and written statements made by him should also have been suppressed because they were obtained as a direct result of an illegal search ("fruit of the poisonous tree"). Defendant Radford contends: (1) that his warrantless arrest was illegal because it was made without probable cause; and (2) the warrantless consent search of the trunk of his car was illegal because his written consent was given under duress and

coercion. The trial court found as a matter of law that the search of defendant Heisman's room by Secret Service agents was legal because Kesterson had third-party authority to consent to a search or, in the alternative, even if there was an illegal third-party consent search there was sufficient other probable cause to serve as a basis for the arrests of both defendants, thus making their subsequent confessions derivative of an independent source. The court also found as a matter of fact that Radford's consent to the search of his car was given knowingly and voluntarily.

We reverse defendant Heisman's conviction and affirm as to defendant Radford.

## HEISMAN.

The central issue in the Heisman case is the legality of the warrantless search of Heisman's room pursuant to consent given by his co-tenant Kesterson. We conclude that Kesterson lacked third-party authority to consent to a search of his co-tenant's room.

 A warrantless search of a private place can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant. Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Recognized exceptions to the search warrant rule include: (1) consent to the search; (2) search incident to lawful arrest; (3) the emergency or hot pursuit doctrine. United States v. Goldenstein, 456 F.2d 1006, 1009 (8th Cir. 1972). The consent exception, upon which the government relies, extends to the warrantless search of a private place when a third person consents to a war-

---

1. Agent Dickerson on cross examination testified that he had obtained information from another agent that there may have been counterfeit money in the storeroom. On redirect examination he testified:

 Q Agent Dickerson, had you been informed that there might be counterfeit money in the box with the red apple on it?

 A Yes.

 Q That was before you saw the defendant Radford put the box with the red apple in his car, is that right?

 A Yes, it was.

rantless search of property over which he and another individual have equal access and control. *See,* e. g., Drummond v. United States, 350 F.2d 983, 989 (8th Cir. 1965). The Eighth Circuit has recognized the validity of third-party consent searches in several circumstances. United States v. Martinez, 450 F.2d 864 (8th Cir. 1971) (owner of garage may consent to search of garage where defendant stored contraband); Wright v. United States, 389 F.2d 996 (8th Cir. 1968) (co-occupier of apartment may consent to search of apartment); Drummond v. United States, *supra* (owner of home and garage as against occupier and lessee); Roberts v. United States, 332 F.2d 892 (8th Cir. 1964) (husband and wife). Thus in a third-party consent search the waiver of personal fourth amendment rights by one party may act as a binding waiver of the personal fourth amendment rights of the party against whom the search was intended. Anderson v. United States, 399 F.2d 753, 756 (10th Cir. 1968).

The Supreme Court in Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), has implicitly, and more recently in United States v. Matlock, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1964), explicitly recognized the right of a third party to consent to a warrantless search of property to which he has "joint access or control for most purposes." *See* Schneckloth v. Bustamonte, 412 U.S. 218, 245–246, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 487–490, 91 S.Ct. 2022, 29 L.Ed. 564 (1971). In *Matlock, supra,* 415 U.S. at 171, 94 S.Ct. at 993, the Court held:

> [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed *common authority over or other sufficient relationship to the premises* or effect sought to be inspected. (Emphasis added.)

Justice White clarified what the Court meant by "common authority" in a footnote to the cited sentence.

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, . . . but rests rather upon mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. [415 U. S. at 171 n. 7, 94 S.Ct. at 993].

■ In the case *sub judice* Kesterson had a property interest in the searched area because he was a co-lessee. The question we must decide, however, is whether he had the requisite "joint access or control for most purposes" over the property. *Id.* We conclude that he did not. Although there was no door or lock to Heisman's room, it was nevertheless an area set aside for his own private use. Kesterson had only been in the room once and then with Heisman's permission. As a practical matter, Kesterson did not have access or control of Heisman's room for *any* purpose. Kesterson and Heisman were co-tenants in a building in which there were both common areas of use and private areas for each to run his separate business. In short, Kesterson had a legal but not a possessory right to the area in which Heisman stored his work product. Thus, Kesterson could not legally consent to a search of that area.

■ At the hearing on defendants' motions to suppress evidence obtained as a result of the search, Kesterson testified that at the time of the agents' request to search he "assumed it was all

right" for the agents to search Heisman's room. This was in response to a question asking whether Kesterson "assumed . . . [he] had access to [Heisman's room]."[2] We do not find layman Kesterson's state of mind on this legal question at the time of the request to be controlling. Whether Kesterson had the requisite "joint access or control for most purposes" must be determined objectively from the facts. Other than Kesterson's subjective thoughts on this matter, there is no evidence that he had control of or access to Heisman's room for most purposes.

█ Because the search in question was warrantless and did not fall within one of the recognized exceptions which validate a warrantless search of a private place, it was an unreasonable search and violated defendant Heisman's fourth amendment rights. Accordingly, the denial of Heisman's motion to suppress the seized counterfeit notes was error. Moreover, we deem this violation of a federal constitutional right to be reversible error. We cannot "declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L. Ed.2d 705 (1967); *see* Holloway v. Wolff, 482 F.2d 110, 116 (8th Cir. 1973).

In view of our holding that the denial of Heisman's motion was reversible error, we find it unnecessary to consider Heisman's second assigned error that certain oral and written statements made by him subsequent to his arrest should also have been suppressed as "fruit of the poisonous tree".[3]

## RADFORD.

Defendant Radford argues on appeal that his warrantless arrest was made without probable cause and thus was illegal. He asserts that because the arrest was illegal, his subsequent oral and written confession was inadmissible as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We find these contentions to be without merit.

█ The arrest of Radford was warrantless. Therefore it was *per se* illegal unless "probable cause" for a warrantless arrest existed at the time. Probable cause exists when "the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy infor-

---

2. Other testimony by Kesterson at the suppression hearing indicates that Kesterson did not believe he had access to Heisman's room. For example:

A * * * [T]hey asked me about the areas, what this room was, and I said that's where Mr. Heisman keeps his personal supplies and they asked me if I had any objection to them going in there and I said no. Whether I had the authority, I don't know, but I said no.

Q But you told them it was Mr. Heisman's office?

A Yes, I did. Asked me if I kept any of my supplies in there. I said no.

* * * * *

Q Do you have equal access yourself with defendant Heisman's area?

A Not specifically. However, we have used each other's areas from time to time —not normally. The only time I was ever in—personally in his office in the supply area was to look for some reproduction paper that he told me I could have, but I didn't find it.

* * * * *

Q You didn't go in there to use his supplies without first asking him, is that right?

A That's right, I didn't have any business in there.

3. In an unpublished memorandum and order denying defendants' motions to suppress Judge Wangelin held that even if the consent search were illegal, there was sufficient probable cause to arrest Heisman, thus making his subsequent confession derivative of an "independent source", Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920), thus not "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Such issue should be left open for determination by the trial court on the basis of the record that may be made in the event of a retrial. *See* Standard Oil Co. v. Iowa, 408 F.2d 1171, 1175–1177 (8th Cir. 1969).

mation are sufficient to warrant a man of reasonable prudence to believe that an offense had been or is being committed by the defendant." United States v. Wahlquist, 438 F.2d 219, 221 (8th Cir. 1971); *see* Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Klingler v. United States, 409 F.2d 299, 303 (8th Cir. 1969); Theriault v. United States, 401 F.2d 79, 81 (8th Cir. 1968); 18 U.S.C. § 3056(a). Probable cause for arrest must be determined upon the objective facts available to the arresting officers at the time of the arrest. Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974); United States v. Stratton, 453 F.2d 36, 37 (8th Cir. 1972). The probable cause for arrest in Radford's case was generated by the arresting officers' observation of Radford receiving and putting into his car what they had reason to believe was counterfeit money.[4] We agree with Judge Wangelin, as stated during the hearing on defendants' motions to suppress, that the agents had reasonable cause to make arrests without a warrant on anybody that came out of the print shop with boxes in their possession. The box Radford was receiving had a picture of a large red apple on it. The box in which Agent Gilmore[5] discovered the counterfeit money also had a picture of a large red apple on it. The agents had reasonable cause to believe that a crime was being committed and that defendant Radford was participating in it.

We are satisfied that probable cause existed for the arrest of Radford.

■ In his final assignment of error defendant contends that the warrantless search made of the trunk of his car subsequent to his arrest was illegal and violative of the fourth amendment because his consent was given under duress and coercion. The trial court found, after an evidentiary hearing, that the consent was given knowingly and voluntarily. Such finding is supported by substantial evidence offered by the government. There is no evidence to the contrary. Moreover, at the time of Radford's arrest there was both probable cause for a warrantless arrest and probable cause for a warrantless search of Radford's car trunk. The search of the trunk of a car is within the permissible scope of a warrantless search incident to a lawful arrest. United States v. Harflinger, 436 F.2d 928, 935 (8th Cir. 1970). *See* Chambers v. Maroney, 399 U.S. 42, 47–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). As we have determined, *supra,* the arrest of Radford was lawful. The trunk of Radford's car was in his immediate proximity. Therefore, even without consent, a warrantless search of Radford's car was permissible as a search incident to a lawful arrest. The district court properly denied Radford's motion to suppress evidence.

The conviction of defendant Heisman is reversed. The conviction of defendant Radford is affirmed.

---

4. Radford in the trial court contended that the evidence discovered in the search of Heisman's room was inadmissible as to him but he makes no such contention on appeal. In any event fourth amendment rights are personal rights. No constitutional right of Radford was violated by the search of Heisman's room and hence Radford lacks standing to attack the legality of the search. Standard Oil v. Iowa, 408 F.2d 1171, 1174–1175 (8th Cir. 1969); Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 22 L.Ed.2d 178 (1969).

5. Agent Dickerson, who did not participate in the search of Heisman's room, arrested defendant Radford. Defendant's contention that Agent Dickerson could not have had knowledge of the contents of the box because he had not been present when Heisman's room had been searched is without merit. The knowledge of one officer participating in an investigation is the knowledge of all participating officers. United States v. Stratton, 453 F.2d 36, 37 (8th Cir. 1972). *See also* note 1, *supra.*